[Note.]

Please, We would like the Honorable Judge of this Honorable Court to, Review this Newsletter. as part of the Exhibits.

# CALFED CRIMINAL DEFENDER®

California/Federal Criminal Defender Newsletter

February 2005

J.M. Irigoyen Law Corporation | 2131 Amador Street | Fresno, CA 93721 | 559-233-3333



## BOOKER IS RETROACTIVE

*United States v. Booker*, 543 U.S.___, 160 L.Ed.2d 621, 125 S.Ct. 738 (2005) held sentencing under the Federal Sentencing Guidelines by judge-determined facts by preponderance violates the Sixth Amendment right to trial by jury. To remedy the problem it amended the Guidelines to discretionary instead of mandatory and adopted unreasonableness as the standard of appellate review.

*Booker's* effect on all sentences at every judicial stage are as varied as the hundreds of thousands of cases in the country. Despite fears and beliefs defendants are worse off under the new system because judges are free to impose harsher sentences, the opposite is closer to the truth. In the former system there was little room for defense tactics except to minimize exposure by guilty plea. The only meaningful defense was to turn clients informants. Now lawyers can be real lawyers and judges real judges. Defendants will no longer be practically forced to plead guilty. They will now have a chance to defend against punishment enhancing facts previously determined by a judge by the 50% plus preponderance of the evidence standard, now required to be proved to a jury by the 90% plus beyond a reasonable doubt standard. See, e.g. *United States v. Fatico*, 458 F.Supp. 388 (E.D.N.Y. 1978) (quantifying standards).

tions. *Schriro v. Summerlin*, 542 U.S.___,159 L.Ed.2d 442, 124 S.Ct. 2519 (2004) provides compelling support for *Booker's* retroactivity to initial *habeas* cases. Although the Supreme Court in *Summerlin* rejected retroactivity of its new procedural rule announced in *Ring v. Arizona*, 536 U.S. 584, 153 L.Ed.2d 556, 122 S.Ct. 2428 (2002) (holding a jury, not a judge, must make the findings necessary to impose the death penalty), it did so because the possibility of inaccuracy was minimal in that both fact finders there were required to use the same beyond a reasonable doubt standard. Pre-*Booker*, on the other hand, judges determined sentence-enhancement facts by preponderance of the evidence. Post-*Booker* those facts must be both determined by a jury and proved beyond a reasonable doubt. Accordingly, pre-*Booker* the fact finding process so "'*seriously* diminishe[d]' accuracy as to produce an "'impermissibly large risk" of injustice.' *Summerlin*, 159 L.Ed.2d at 451. (Emphasis original).

The *Booker* rule which remedied that risk is therefore very likely exempt from the *Teague v. Lane*, 489 U.S. 288, 103 L.Ed.2d 334, 109 S.Ct. 1060 (1989) retroactivity bar under the watershed rule of criminal procedure exception. See, e.g. *In re Winship*, 397 U.S. 358, 25 L.Ed.2d 368, 90 S.Ct. 1068 (1970); cf. *Ring v. Arizona*, 536 U.S. 584, discussed in *Summerlin*.

tive effect to *Duncan v. Louisiana*, 391 U.S. 145, 20 L.Ed.2d 491, 88 S.Ct. 1444 (1968) (applying Sixth Amendment jury trial guarantee to the states) to reject retroactivity is inconsequential to *Booker's* retroactivity. In *DeStefano*, like *Summerlin*, the fact finding standard on which retroactivity was claimed was the same, only the fact finder differed. *Booker* changed those standards exactly as did *In re Winship*, 397 U.S. at 363-64, 25 L.Ed.2d at 375 (requiring juvenile charges be proved by proof beyond a reasonable doubt instead of preponderance, reasoning the reasonable doubt standard "is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence–that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law'"). Because the foundation of *Booker's* new rule of constitutional law rests on both the *Apprendi* due process doctrine and the *In re Winship* Sixth Amendment right to jury trial with respective beyond a reasonable doubt proof standards, retroactivity to initial *habeas* petitions should present no great problem.

Retroactivity for purposes of second or successive federal *habeas corpus* requires retroactivity be made by the Supreme Court. *Tyler v. Cain*, 533 U.S. 656, 150 L.Ed.2d 632, 121 S.Ct. 2478 (2001). According to *Tyler v. Cain*, the Supreme Court can make new rules retroactive (1) by declaration, (2) by application of the rule to a *habeas* case (*id.*, 533 U.S. at 665, 150 L.Ed.2d at 645), or (3) through multiple holdings which "necessarily dictate retroactivity of the new rule [ ]" (*id.*, 533 U.S. at 668-70, 150 L.Ed.2d at 646-47 (O'CONNOR, J., concurring). *Booker* has arguably made its new rule retroactive in all three ways plus three more.©

First, *Booker* specifically declared "both the Sixth Amendment holding and [its] remedial interpretation of the Sentencing Act [retroactive] to all cases on direct review." BREYER, J., Slip Opinion, at 25. Instead of limiting retroactivity only to cases on direct review, like Mr. Booker's and Mr. Fanfan's, by that statement the Supreme Court more likely made *Booker* retroactive to all cases.

This is so because *Booker's* Sixth Amendment new rule simply "reaffirm[ed] [its] holding in *Apprendi*: [that] [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.*, STEVENS, J., Slip Opinion at 20. That rule is but a magnification of its *In re Winship*, 397 U.S. 358, 25 L.Ed.2d 368 rule "that the Constitution protects every criminal defendant 'against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Booker*, STEVENS, J., Slip Opinion at 5.

In *Ivan V. v. City of New York*, 407 U.S. 203, 205, 32 L.Ed.2d 569, 661-62, 92 S.Ct. 1951 (1972) (*per curium*) the Supreme Court declared *In re Winship* must "be given complete retroactive effect." *Ivan V* was also a direct appeal case like *Booker*. However, the Supreme Court's declaration left no doubt its retroactivity declaration meant retroactivity to all cases, final or otherwise. Proof of it is in the several *habeas* cases in which the Supreme Court subsequently applied variations of its *In re Winship* rule. See, e.g. *Yates v. Evatt*, 500 U.S. 391, 114 L.Ed.2d 432, 111 S.Ct. 1184 (1991) (apply-

Second, by so applying the *In re Winship*-type rule to multiple *habeas* cases, the Supreme Court has arguably also *de facto* applied its *Booker* constitutional rule through those past cases. If *Booker* and *In re Winship* are rules of the same type, application of one to *habeas* proceedings is application of the other thus making both retroactive under *Tyler v. Cain's* application retroactivity method. *Id.*, 533 U.S. at 665, 150 L.Ed.2d at 645. But, cf. *In re Turner*, 267 F.3d 225 (3rd Cir. 2001) (rejecting same argument as to *Apprendi*).

Third, it is similarly possible the Supreme Court has made its *Booker* constitutional rule retroactive through its multiple holdings because it held in "Case One [*Ivan V.*, 407 U.S. at 205, 32 L.Ed.2d at 661-62] that [the *In re Winship*] type of rule applies retroactively to cases on collateral review and [held] in Case Two [*Booker*] that [its] rule is of that particular type, then it necessarily follows that the [*Booker*] rule applies retroactively to cases on collateral review." *Tyler v. Cain*, 533 U.S. at 668-669, 150 L.Ed.2d at 646 (O'CONNOR, concurring). But, cf. *In re Turner*, 267 F3d 225 (rejecting same argument as to *Apprendi*).

Fourth, *Booker* has arguably made its rules retroactive through its Guideline clarifying amendments. It is well established Guideline clarifying amendments are retroactive. See, e.g. *United States v. Garcia-Cruz*, 40 F.3d 986, 990 (9th Cir. 1994) ("Under the law of our circuit, amendments to the Sentencing Guidelines which are 'clarifying' as opposed to 'substantive' may be given retroactive effect"); see also, *United States v. Stinson*, 30 F.3d 121, 122 (11th Cir. 1994) (*per curium*) (collecting cases). *Booker* made no substantive changes to the Guidelines. It merely interpreted them (BREYER, J., Slip Opinion, pg. 25)("our remedial interpretation of the Sentencing Act") advisory as "'Congress would have intended'" (*id.* pg. 2) had it known its mandatory provision violated the Sixth Amendment right to jury trial. See, also *id.*, pg 22. ("Hence we have examined the statute in depth to determine Congress' likely intent in light of today's holding.") (emphasis original).

*Booker's* amendment accordingly merely clarified Congress' intent in light of its Sixth Amendment holding. Had *Booker* "superimpos[ed] its [Sixth Amendment] constitutional requirement announced [therein]" (*id.*, pg. 3) by "engraft[ing] the Court's constitutional requirement onto the sentencing statutes, [it] would [have substantively] destroy[ed] the system[ ]" (*id.*, pg. 9). Such substantive change would have produced unintended identical punishment for different degrees of similar crimes (*id.*) and vise-versa (*id.*, pg. 10) thus destroying Congress' goal of sentence uniformity (*id.*). Because the *Booker* Sentencing Reform Act amendments did not change the Guidelines substantively but merely interpreted them as advisory instead of mandatory, such amendment is only a clarifying amendment necessarily retroactive.

*Booker's* additional amendment to the sentencing appellate process also changed nothing substantively. It only clarified the standard of review Congress would have preferred in light of its Sixth Amendment holding. Retroactivity of such changes in the post conviction process is hardly a problem. See, e.g. *Collins v. Youngblood*, 497 U.S. 37, 111 L.Ed.2d 30, 110 S.Ct. 2715 (1990) (STEVENS, J., concurring).

must one other statutory section, §3742(e) (main ed. and Supp. 2004), which depends upon the Guidelines' mandatory nature. So modified, the Federal Sentencing Act, see Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et seq., 28 U.S.C. § 991et seq., makes the Guidelines effectively advisory.

*Booker*, BREYER, J., Slip Opinion, pg. 2.

Congress' power to make or amend remedial statutes retroactively absent *Ex Post Facto* problems is unquestionable. See, *Freeborn v. Smith*, 69 U.S. at 168, 17 L.Ed. at 923 ("We do not question the validity of retrospective statues that are purely remedial"); see, also *Frisbie v. Whitney*, 76 U.S. 187, 19 L.Ed. 668, 9 Wall 187 (1869). Retroactivity thereby is simply a matter of intent. See, e.g. *Rivers v. Roadway Express*, 511 U.S. 298, 311, 128 L.Ed. 2nd 274, 278, 114 S.Ct. 1510 (1994) ("The question is whether Congress has manifested such an intent."). Because in *Booker* it is the Supreme Court which remedially modified the Sentencing Reform Act of 1984 as "'Congress would have intended'" (BREYER, J., Slip Opinion, pg. 25) had it known in 1984 its mandatory Sentencing Guidelines violated the Sixth Amendment (*id.*, pg.22) ("we have examined the statute in depth to determine Congress' likely intent in light of today's holding.") (emphasis original), *Booker's* indisputable intent to modify the Guidelines *nunc pro tunc* is dispositive.

Lastly, even if the Supreme Court did not assume Congress' role in modifying the Sentencing Reform Act, in construing and interpreting it as "'Congress would have intended '" (BREYER, J., Slip Opinion, pg. 25) had it known its mandatory Sentencing Guidelines violated the Sixth Amendment (*id.*, pg. 22), the Supreme Court has necessarily made *Booker* retroactive.

Like *Booker*, the Supreme Court in *Patterson v. McLean Credit Union*, 491 U.S. 164, 105 L.Ed.2d 132, 109 S.Ct. 2363 (1989) interpreted a 123-year old statute differently than appellate courts had done since its enactment. As to Patterson's retroactivity the Court said:

> A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction[.] Thus Patterson provides the authoritative interpretation of the phrase 'make and enforce contracts' in the Civil Rights Act of 1866 before the [Congressional] 1991 amendment [overruling Patterson] went into effect on November 21, 1991. [Patterson's] interpretation provides the base line for our conclusion that the 1991 amendment would be 'retroactive' if applied to cases arising before that date.

*Rivers v. Roadway Express*, 511 U.S. 298, 313, 128 L.Ed.2d 274, 289.

has no authority to depart from the Congressional command setting the [November 1, 1987] effective date of the [the] law [ ] it has enacted [ ]" (*Rivers*, 511 U.S. at 313, n.12, 128 L.Ed.2d 289, n.12).

Given the general consensus of the legal profession and the public that *Booker* is not retroactive to final cases, we welcome anyone to prove us wrong so that we can be more correct. Surely there are weak points in every retroactivity argument we have presented. But in order of respective strength, the fifth, last, fourth, and first arguments each can stand on its own. Jointly, the sixth arguments leave little room to deny *Booker's* retroactivity.

We have also carefully considered why *Booker* ends up helping final cases, which Congress has so desperately tried to make immutable, more than others and have concluded this result was unintentional. *Booker* discusses all of the defense windfalls and complexities other Guideline holdings would have had and concluded its Guideline amendments better express Congress' intent in light of its Sixth Amendment holding. Non-final and future case outcomes will now greatly depend on lawyering skills. Final sentences, on the other hand, will be limited by Double Jeopardy (see, e.g. *United States v. Velasco-Heredia*, 319 F.3d 1080, 1085-1087 (9th Cir. 2003)) and Due Process (see, e.g. *Webster v. Woodford*, 361 F.3d 522, 526 (9th Cir. 2004)) strictly to the maximum the jury found beyond a reasonable doubt. In truth that is no windfall to the victimized defendants. It is simply an adjustment commensurate with proper proof. Ironically, their benefit is but a consequence of an otherwise practical middle ground decision erroneously interpreted by many as pro-Government.



But beware the *Booker* key to thousands of Federal prisoner releases will work only until January 12, 2006! Thereafter prison doors will slam shut for a long time.

©All authorship rights to the 6 *Booker* retroactivity theories presented herein are reserved. All work independently originated by CalFed staff. However, we subsequently discovered the second and