IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DIVISION OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 3 0 2005

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| DAVID GUERRERO-AGUILAR | § | |
| MOVANT/PETITIONER | § | CIVIL ACTION NO. B-04-130 |
| v. | § | |
| UNITED STATES OF AMERICA | § | (CR. NO. B-01-053) |
| RESPONDENT | § | |

PETITIONER'S RESPONSE
TO THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

BEFORE THE HONORABLE JUDGE OF SAID COURT:

NOW COMES David Guerrero-Aguilar, here-in after Petitioner, Pro-Se, in the above numbered cause with His response to the Magistrate Judge Felix Recio's Report and Recommendation in this cause to which Petitioner does make His "written objections to the proposed findings, conclusions and recommendation" of the Magistrate Judge in that Report and Petitioner does file those here-in included objections "within 10 days after being served" with a copy of said Report.

RECENT PROCEDURAL HISTORY RELATIVE TO PETITIONER'S APPEAL

**08/05/2004:** Petitioner files His §2255 Motion seeking relief pursuant to **BLAKELY V. WASHINGTON,** U.S. 124 S.Ct. 2531 (2004), the holding of which was extended to the Federal Sentencing Guidelines in **BOOKER V US,** 125 S.Ct. 738 (2005).

**01/12/2005:** The Supreme Court renders it's landmark watershed decision in **BOOKER** in which it extended it's holding in **BLAKELY** to the United States Sentencing Guidelines after finding that mandantory application of those guidelines could lead to a violation of a defendant's 6th Amendment right. The Court then authors a remedial decision that, in the Court's majority opinion, 'fixes' the USSG's implication of the 6th Amendment but, still **"significantly alters"** the sentencing system that Congress approved.

**02/24/2005:** The Goverment responds to the Petitioner's §2255 Motion and files a Motion

to Dismiss 4 days shy of the six months and three weeks the Order of the Court granted the Goverment to make it's response.

**03/30/2005:** Petitioner files a response to the Goverment asking the Court to deny the Goverment's Motion to Dismiss and that His §2255 Motion be reconsidered pursuant to the Supreme Court's decision in **BOOKER**.

**06/14/2005:** Magistrate Judge Felix Recio submits His Report and Recommendation with it's "proposed findings [and] conclusions" three months and two weeks after the Petitioner filed His request to deny the Goverment's Motion to Dismiss.

## STANDARD OF REVIEW

Petitioner submits that this rsponse **must** be reviewed under the 'reasonableness' standard advanced and dictated by the Supreme Court in it's remedial opinion in **BOOKER**, especially so because the Magistrate Judge's Report and Recommendation, which Judge Recio authored **after BOOKER**, does not follow that direction of the superior court and instead lays **significant** predjudice upon the Petitioner; so being in that, though He authored HIs "proposed findings, conclusions and recommendation" some **five months** after **BOOKER** and therefore should have applied **BOOKER**'s 'reasonableness' standard therein, the Magistrate Judge **unreasonablely** makes notice to the Petitioner that the Petitioner's objections to the Report must be forthcoming within **ten days** of Petitioner's receipt of said Report.

If Judge Recio spent any measurable time on review of the Petitioner's appeal, the Judge **must** have been aware that the Petitioner is not an attorney nor otherwise exceptionally experienced or knowledgeable in the law. Judge Recio **must** also have been aware, **since His signature appears upon it**, that the Order of the Court, to the **very** experienced and knowledgeable attorneys who, representing the Goverment, authored It's objections to the Petitioner's §2255 Motion, granted those attorneys <u>**over 180 days**</u> in which to conduct research and compile an argument to controvert the Petitioner's claim **though the stipulations of §2255 dictate that such response <u>shall be "prompt"</u>**. Therefore, having allegedly considered the Petitioner's lack of legal knowledge and experience, and having considered the necessity for the Petitioner to submit a sufficiently

adequate objection containing 'actual' findings of legal fact to controvert the "proposed" findings of the Magistrate Judge's Report in order for the Petitioner to prevent the issuance of final judgement denying Him relief, for Judge Recio to still, **in the face of that alleged consideration which He was required to lend**, to make notice to the Petitioner that He must submit those objections; of which Judge Recio knew Him to be immediately without the ability to do, **within ten days** is assinine, **un**reasonable and predjudiced.

Petitioner would openly challenge this Honorable Court, **indeed, any court in the Federal Judiciary,** to suggest that for Judge Recio to grant the experienced and knowledgeable attorneys for the Goverment with their considerable resources **more than six months** to respond to the Petitioner's Motion, **when the statutorial provisions of the staute from which the Petioner's Motion originates** dictate that that response **shall** be prompt, and then serve the Petitioner notice that; with His debilitating lack of **any** of those assests, **which Judge Recio knew to be the case**, the Petitioner shall make objections which, logically, **must** be, **at least**, legally sound to have any hope of being considered, **in only ten days**, is **not** the epitome of unfairness as it serves to be an exceptionally obvious example of Judge Recio's **prohibited** bias for the Goverment. Not only are the Magistrate Judge's actions ecthically challenged, they are an abject rendering of **judicially required** impartiality and unbecoming one who allegedly serves the **Honorable Court, not those who bring the charges in that court**, and is likewise charged with the duty to do **justice**.

Nonetheless, exercising His best ability, coupled with the assistance of a bilingual fellow inmate, the Petitioner can and does show that He is challenging His sentence on an issue of constitutional magnitude and shows cause for both His procedural default and the actual predjudice ariseing from that issue **and** shows that that issue did result in a miscarrige of justice in that it constituted a violation of His 6th Amendment right and served to subjugate Congressional intent in sentencing in that the sentence imposed **does not reflect the Petitioner's "real conduct"** underlying the actual offense He was charged with or admitted to as the Petitioner was, in effect, repunished for a previous crime not once, **but twice** and that enhancement was beyond the Court's

jurisdictional authority to proscribe.

The Petitioner submits that the Magistrate Judge's "proposed" findings and conclusions, upon which He based His recommendation are not 'factual' findings nor are they legally sound conclusions. In support of this assertation, the Petitioner further submits the following points of discussion for the Honorable Court to consider in a just manner befitting the Court rather than in a manner similar to the derilict abomination of consideration employed by the Magistrate Judge.

The Petitioner's **OVERVIEW OF BOOKER** is compiled almost exclusively from the **BOOKER** decision itself and shows facts and aspects of the decision that **both** the authors of the Goverment's response and Judge Recio failed to recognize, ignored or both or otherwise misinterperted in their consideration and examination of Petitioner's appeal. The Petitioner's **ARGUMENT FOR JURISDICTION/RETROACTIVITY** shows that the Petitioner **does** have jurisdiction as His §2255 <u>is not untimely</u> and further shows that the Supreme Court's holding in **BOOKER**, that the implication of a defendant's 6th Amendment right is indeed retroactively applicable for use by the Petitioner in requesting collateral review for the purpose of relief.

The Petitioner respectfully submits that the following discussion, effectively and completely, **on a point for point basis**, controverts the Goverment's Response and Motion to Dismiss and does serve to equally discount and debase the Magistrate Judge Recio's "proposed findings, conclusions and recommendation". The Petitioner does agree with the Goverment's claim that **BOOKER** defines a new rule of criminal procedure but does disagree with nearly every other finding and does show reason and a factual, legal basis for each reason. As **BOOKER**'s finding that mandantory application of the USSG can implicate a deffendant's 6th Amendment right was previously unavailable, the Petitioner has no requirement to provide procedural default explinations **as it is patently impossible for this Petitioner, with His admitted limited legal knowledge, to preserve an issue He did not know existed, nor had any premonition would later be illuminated by a future Supreme Court ruling.**

As the following is, for all intentions and purposes, an extension of His original §2255 Motion, the Petitioner titles His response as an Addendum to His original Motion.

ADDENDUM TO PETITIONER'S ORIGINAL §2255 MOTION

IN RESPONSE TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION PURSUANT TO THAT MOTION

I. PETITIONER'S OVERVIEW OF THE SUPREME COURT'S DECISION IN BOOKER

Evaluation of a defendant's constitutional right to jury trial under the 6th Amendment, as newly interperted in **APPRENDI V. NEW JERSEY,** 530 US, 147 L.2d. 435 (2000), in light of the Sentencing Act's language, history and basic purposes, demonstrates that that constitutional requirement **is not compatible** with the Act as written.

Therefore, the Act, whenever it was applied, as it was required to have been, pre-**BOOKER**, in a manner which resulted in a sentence that exceeded the statutory maximum, which, barring the fact of a prior conviction, was to have been based soley on facts found by a jury to be true beyond a reasonable doubt or admitted to by the defendant; in **every** such instance it was so applied, **since the Act's inception,** the mandantorily imposed sentence **also** violated that defendant's right to a **fair and impartial** trial or plea proceeding by **forcing** that defendant to serve a term of imprisonment longer than that which he should have. The wieght of "finality" advanced by Congress in the passing of the **AEDPA** in 1996 **does not exceed the wieght of injustice in such circumstances.**

Such unconstitutional application was also in direct violation of the Act, even pre-**BOOKER**, specifically it's statutorial purpose to, in the words of the **Chairman** of **the Sentencing Commission himself,** Judge Ricardo Hinojosa, "provid[e] fair and just sentences". In failing this purpose, said application further distanced itself from Congressional intent in the Act by additionaly conflicting with the Act's statutorial requirement of "promot[ing] respect for the law". It is noteable that both of these requirements **remain** part of the Act post-**BOOKER.**

Petitioner respectfully submits that any "reasonable" person would logically find such an <u>un</u>constitutionally imposed sentence '<u>un</u>reasonable' and in conflict with the "sound administration of justice", both of which the Supreme Court deemed to be appropriate standards of review that may be inferred from the Act's statutory language and structure, have, in fact, been "familiar and practical standards of review for the

**past two decades** of appelate practice in which departures from the Guidelines existed".

The Court's suggested excision of §3553(b) and §3742(e) preserve all of the above "important pre-existing elements" of the Act, in keeping with Congressional intent since the inception of the Act, for consideration in sentencing post-**BOOKER**. In this Petitioner's view, the **true** consideration of these "important pre-existing elements" was deficient **pre-BOOKER** because, even with this remedial approach determined to best fit Congress's original intent, the now advisory nature of the Act **still** requires "maintaining a **strong** connection between the sentence imposed and the defendant's "<u>real conduct</u>" to meet the statutorial requirement of "uniformity of sentencing that Congress intended the Guidelines System to achieve". Was this **already** the case, neither **BOOKER** nor this Petitioner would have come back before the courts, nor is it likely that the Supreme Court would have determined that it's remedial approach still "**significantly alters**" the system that Congress approved.

Such severability questions have previously arisen where a statute has been deemed defective for it's failure to extend to some group a constitutionally required benefit and the resulting answer from the court was that it may "either declare it a nullity" or "extend" the benefit "to include those who are aggrieved by [the] exclusion". <u>HECKLER V. MATHEWS</u>, 465 US 728, 739 n.5 (1984) In it's remedial approach in **BOOKER** the Court chose the former; they nullified the two portions of the Act which caused it's incompatibility with the 6th Amendment's constitutional requirement, **even though** "ordinarily 'extension, **rather than nullification, <u>is the proper course</u>**'" because "the court **should not, <u>of course</u>** 'use it's remedial powers to circumvent the intent of the legislature'" (<u>WELSH V. US</u>, 398 US 333, 361 (1970)), such intent, **embodied in the Act pre and post-BOOKER**, being the "sound administration of justice" thereby "promot[ing] respect for the law" through "provid[ing] just punishment" based on a defendant's "real conduct".

Petitioner submits that the Court's remedial opinion, apparently based, in the words of the Court in **BOOKER**, on "evaluating the consequences of the constitutional requirement" which shows that that requirement "would nonetheless **affect <u>every</u> case**",

"**including** the content of **plea bargains**" because the "jury trial requirement is not compatible with the Act as written", <u>does not, by itself, serve justice</u> as there are **thousands** of already sentenced inmates, this Petitioner included, who are <u>very</u> "aggrieved"; for whom the Court's directed return to the original statutorial intent of the Act by nullification of portions of it **now** does **nothing** to resolve the <u>un</u>sound, <u>un</u>constitutional administration of **deficient** "justice" they were **then** subject to via mandantory application of the Act, pre-**BOOKER and** <u>remain hostage to</u> by means of an imposed sentence which exceeded that which they justly deserved **and** which Congress **intended** them to serve. Petitioner submits that this was already the original intent of Congress, **even before APPRENDI**, in that Justice Breyer admitted, and the majority of the Court concurred with his statement that, "Congress, had it been faced with the constitutional jury trial requirement, likely **would not have passed the Sentencing Act**" as "it likely would have found the requirement incompatible with the Act as written". In fact, the Department of Justice was aware of the possible sentencing disparities that could result from mandantory application of the Guidelines <u>five years</u> before **BOOKER**, when the issue was initially illuminated in **APPRENDI**. The DOJ advised federal prosecutors "to adopt practices that would enable them 'to charge **and** prove to the jury facts that increase the statutory maximum'". Even the Court itself advanced that it "**would be a simple matter**, for example, in prosecutions under the federal drug statutes (**such as BOOKER's prosecution**)" for prosecutors "to allege facts...in the indictment and prove them to the jury beyond a reasonable doubt". Either the Court was mistaken in it's assumption of simplicity or the federal prosecutors chose **not to obey the order and directive of the superior Court** <u>and</u> **their own direct superior in the DOJ.** Therefore **all** sentencing done by the Federal Courts since **APPRENDI** and the issuance of both the memorandum from the DOJ **and** the instruction of the Supreme Court is that much more **unconsionable and reprehensible** if it involved the issue of a sentencing disparity brought **again** before the Court in **BOOKER** simply because the likelihood of such disparity could and should have been addressed before the imposing of sentence.

    As those "aggrieved" defendant's and this Petitioner are not alone in the service

of that unjust sentence, in that it also affects their families, friends and, in some cases, their communities, the pre-**BOOKER** sentencing procedures **not** being retroactively applicable for collateral review to allow for correction of that sentence further controverts Congressional intent **and** the actual statutorial purposes of the Act by serving to negatively impact public perception of the "fairness" of the Judiciary, impeeding "respect for the law" by undoubtedly diminishing the capacity for that respect **even in those not directly affected.**

The **BOOKER** decision has received considerable press coverage due directly to it's being "**the most significant case affecting the Federal Guidelines System since the Supreme Court upheld the Sentencing Reform Act in 1989 in MISTRETTA V. US, 488 US 361**".; in the words of Judge Ricardo Hinojosa, **Chairman** of the United States Sentencing Commission, during testimony before the Subcommittee on Crime, Terrorism and Homeland Security. It has also been the subject of other hearings, some of which were broadcast in their entirety on C-SPAN, portions of which showed up on CNN and NBC Nightly News. The decision, with all it's here-in quoted facts is readily available on the internet.

How then, in light of this exposure, can this Honorable Court, indeed **any** Court in the Judiciary, fail to believe that some loss of public confindence and respect has not resulted from the very public admission, **by the highest Court in the land,** that the sentencing system, **enacted by Congress,** in effect for **two decades,** has directly affected **every** taxpayer in the country by forcing them to pay the cost of incarceration for **thousands** of their **fellow citizens** serving unconstitutionally enhanced sentences for elements of criminal conduct they neither admitted to nor were found guilty of? Petitioner submits that this Honorable Court **cannot** "reasonably" believe otherwise, especially in the additional light cast on the issue that, with-in those **thousands,** there may be **hundreds** of cases that involve a just sentencing disparity of **nearly ten years** such as that in the recently corrected sentence of Roy Gonzales (**GONZALES V. US, Western District of Texas, San Antonio Division, cause #SA-03-CR-496(02)-XR (4/18/2005)**). Would not even the least interested common taxpayer, already burdened by the weight of the extreme budgetary concerns of the nation for the war on

terrorism, national security and healthcare, not take note of the actual cost of incarceration that must be implicated to clothe, feed, house and provide medical care for thousands of Americans unjustly imprisoned in violation of the Constitution that is in place to protect us all?

Petitioner respectfully submits **BOOKER**'s implications do cast a tremendous, dark shadow that blankets the entire Federal Judiciary and the only way to remove that shadow is to see and cause justice to be done by correcting the twenty years of unjustly imposed sentences dispenced by the Federal Courts under mandantory application of the Sentencing Act, pre-**BOOKER**, via retroactive application of **BOOKER** on collateral review.

## II. PETITIONER'S ARGUMENT FOR JURISDICTION/RETROACTIVITY

Several petitioners have come forth since **BOOKER**, this Petitioner included, seeking relief via a 2255 Motion. Some of these petitioners came forth under a second or successive 2255, having originally brought such Motion after **BLAKELY V. WASHINGTON, 542 US___ (2004)**. Obviously, the exact number of petitioners and their respective arguments or merits are unknown to this Petitioner. There are, however, in addition to this Petitioner's response, eight other responses to such **initial** 2255 Motions, **all** denials, all nearly identical in their denials even though they originated from different District Courts with-in the 5th Circuit, which have come back to other inmates in Petitioner's place of incarceration, that Petitioner does have knowledge of and does now address. Petitioner's reasoning for addressing the points presented in those other responses, in addition to His own is simple: the Goverment's argument for denial for each of those 2255 Motions, Petitioner's included, being so similar in nature, are legally, factually and inherently unsound and predjudicial and this Petitioner exposes them as such to prevent this Honorable Court from exercising them as grounds to dismiss or deny Petitioner's requested relief on appeal.

### II.(a): JURISDICTION

All the respective responses found each of the initial 2255 Motions to be untimely

even though each petitioner properly requested relief pursuant to: 1) Rule 1 of §2255, in that each petitioner was, and is, "a person in custody pursuant to a judgement... that...was imposed in violation of the Constitution of the United States" and "that the sentence was in excess of the maximum authorized by law", 2) Rule 2 of §2255, in that each petitioner "is presently in custody pursuant to the federal judgement in question" and "the application for relief [was] in the form of a motion to vacate, set aside or correct sentence", and, 3) Rule 3 of §2255, in that each petitioner "filed in the office of the clerk of the district court".

Neither this Petitioner nor those petitioners would have had grounds for relief under Rule 1 pursuant to a 2255(6)(3) if 1) the Supreme Court had not intially recognized the right asserted; that each was unconstitutionally sentenced by mandantory application of the United States Sentencing Guidelines which allowed sentencing enhancements in violation of their 6th Amendment right, and, 2) the right asserted was **not** retroactively applicable for collateral review. So long as this Petitioner and those petitioners filed with-in one year of the simultaneous occurance of both of these requirements, they would not be untimely in their filing. Petitioner submits this to be the case in His 2255 Motion and advances the following in support:

**requirement 1:** Is or was Petitioner's asserted right newly recognized by the Supreme Court?

Prior to **BOOKER** the Supreme Court did not find that mandantory application of the USSG implicated a defendant's 6th Amendment right as defined in **APPRENDI**. Even after the Court's decision in **BLAKELY**, likely due to Justice O'Conner's opinion, the Sentencing Commission issued it's own amicus brief in which it **vigorously** asserted that **BLAKELY**'s holding **did not** apply to the USSG. In fact, in **BOOKER**, the Court stipulated that it's "pre-**APPRENDI** cases considering the Guidelines are inapplicable, as they did not consider application of **APPRENDI** to the Sentencing Guidelines" and, since **APPRENDI** defined "a constitutional requirement that creates fundamental change" because "to engraft the Court's constitutional requirement onto the sentencing statutes...would **de-**

stroy the system" the Court excised those portions of the Act that made it's application mandantory and remanded **BOOKER** back to the District Court for resentencing. This decision, that mandantory application of the USSG which enhanced a defendant's sentence beyond that which should have been imposed, barring the fact of a prior conviction, based soley on the facts found to be true beyong a reasonable doubt or admitted to by the defendant, was made, **for the first time**, by the Supreme Court, on January 12th, 2005. Therefore, any petition filed with-in one year of January 12th, 2005, in which the requested relief was the vacating, setting aside or correction of a sentence imposed in violation of said petitioner's 6th Amendment right, **would**, in fact, be a claim based upon a right newly recognized by the Supreme Court and would not be untimely.

## II.(b): RETROACTIVITY

**requirement 2**: Is this newly recognized right retroactively applicable for collateral review?

In each response of denial to every petition from each of the District Courts, the Goverment stipulates that the Supreme Court did not rule **BOOKER** to be retroactive and **only** applied the **BOOKER** ruling to cases pending on direct review or not yet final. In each denial the Goverment also cites several rulings from various Circuit Courts which advanced the same opinion in a plethora of cases, the most often cited cases being **ANDERSON V. US**, 396 F.3d 1336 (11th Cir, 2005), **GREEN V. US**, 397 F.3d 101 (2nd Cir, 2005), and **MCREYNOLDS V. US**, 397 F.3d 479 (7th Cir, 2005).

The rather obvious flaw in this argument, indeed in the cases cited, as they pertain to those Motions and, by extent, to this Petitioner's Motion are as follows:

1) For a petitioner to have jurisdiction to submit an **initial** 2255 Motion, the Supreme Court does not have to expressly rule the asserted right the petitioner claims retroactive. This requirement must be met in order for the petitioner to have jurisdiction **to request to submit a second or successive** 2255 Motion. Therefore the District Courts are **erring in their interpertation of an initial 2255 Motion.**

2) The Supreme Court **did not** explicitly nor implicitly say, state, find, rule or mandate **BOOKER not to be** retroactively applicable, nor did the Court explicitly nor implicitly say, state, find, rule or mandate **BOOKER to be** retroactively applicable. Therefore, the various District **and** Circuit Courts, **all** claiming the **not to be** side of what was **not** explicitly nor implicitly stated, are imparting a factually prejudicial and deficient opinion **partial** to their view which is legally unsound for, if those petitioners argue, **and this Petitioner does**, the **to be** side of what was **not** explicitly nor implicitly stated, these equally opposite arguments would bring both parties to an impass as the legal and factual basis of each claim, **based on interpertation of language not existing**, lends no favor, in it's deficiency, to either side.

3) While the Supreme Court **did** apply **BOOKER** to all cases pending on direct review or not yet final, **it did not do so in conjunction with the word "only"**. Rather, the Court used the word "must" as stipulated by **GRIFFITH V. KENTUCKY, 479 US 314, 328 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)**. Obviously, a new rule of criminal procedure "must" be applied to cases pending on direct review or not yet final as those cases **are now before the courts**; such review is necessary to prevent occurance of a violation of that rule that would give rise to a future claim **once those cases were final**. This is in keeping with Congressional intent in the passing of the **AEDPA** in 1996 and it's purpose of restriction of the litigation costs associated with an unrestricted appeals process. The wording of the Court in no way implies the addressing of anything but this fact, hence the Court's citing of **GRIFFITH**. Again, the denials of those petitioner's 2255 Motions as authored by the Goverment attorneys in those District Courts, indeed, **even the cited Circuit Court's denial opinions**; **all** argue this point predjudicially - from only one side of what was not actually said or stated by the Court as a whole or the Justices individually - and those that go so far as to insert the word "**only**" into their already biased argument **dishonor** themselves, the Court and the appelate process.

4) All the cited Circuit Court opinions, in the aforementioned most cited cases, upon which the District Courts relied upon, in part, for an additional basis in their denial, themselves cite **TYLER V. CAIN, 533 US 150 L.Ed.2d. 632 (2001)**, specifically;

"the Supreme Court is the only entity that can 'ma[k]e' a new rule retroactive. The new rule becomes retroactive...simply by the action of the Supreme Court". This is again predjudicial on the part of the Goverment's authors of the District Court denials in that **TYLER** was decided in the context **of a second or successive 2255 Motion** and, as such, going back to point 1), **is not applicable** to an <u>initial</u> 2255 Motion. Naturally, the first part of the **TYLER** quote, **which does apply to the cited cases**, as they are second or successive 2255's, which states: "in the context of a second or successive 2255 petition" is omitted from the cite quotes in each District Court denial. For this Petitioner to refer to such ommission as anything other than 'natural' would be denying the rather obvious pattern of 'lean' evident in **eight denials authored by eight different District Courts**, all of which happen to be in the 5th Circuit.

5) This 'lean' is further evident in five of the eight denials, and this Petitioner's, which cite the reasoning of **SCHRIRO V. SUMMERLIN, 124 S.Ct. 2519 (2004)** and it's decision pursuant to **RING V. ARIZONA, 536 US 584 (2002)** as "persuasive and pertinent" regarding the retroactivity of **BOOKER**. Petitioner <u>strongly</u> disagrees and uses the "persuasive and pertinent" facts of **BLAKELY** as the basis for disagreement. After **BLAKELY**, both the Sentencing Commission and various Circuit and District Courts asserted, **vigrously asserted** on the part of the Sentencing Commission, that **BLAKELY** did not apply to the USSG as it was a **State** sentencing issue and subsequently denied hundreds of Federal inmates requesting relief via a 2255 for that very reason. How can the Goverment now place itself on the opposite side of the **same argument**, saying that a State case does apply to a **Federal** one and then again deny relief when **neither SCHRIRO** <u>or</u> **SUMMERLIN**, like those pre-**BOOKER** claims about **BLAKELY**, <u>apply to the USSG</u>? Playing the ball from both sides of the court leaves little room for Justice in what amounts to an enviable display of legal manuevering that certainly crosses the line of fairness and impartiality.

All these substantive facts aside, Petitioner has yet to show that **BOOKER is** retroactively applicable for collateral review. The fact that the Supreme Court actually stated that the mandantory application of the Act in a manner which enhances a defendant's sentence beyond that which he should have been given is not already enough

is, indeed, a sad statement of the perversion of 'Justice' in the Federal Courts. It is very "**unreasonable**" for a "reasonable" man to logically conclude that an act, which has now been found to be unconstitutional in it's application, has not been unconstitutional **since it's inception**. <u>**If it is now unconstitutional**</u>, then a "reasonable" man **must** conclude that it <u>**has always been unconstitutional**</u>. To **force** this Petitioner, indeed **any** petitioner, to prove that **not only** is He victim of such a constitutional violation, **but to also prove** that the law <u>**allows**</u> Him retroactive relief when it is plainly obvious He is entitled to it, is such a haneously unconsionable act with-in the realm of **Justice**, that those who require and mandate it in a request for relief **and then deny that relief** because the request is "untimely", should themselves be **forced** to serve a term of imprisonment in violation of their own allegedly 'guaranteed' constitutional rights. Though these two wrongs would certainly not equal a right, they would at least balance the scales in that **both parties** would be unjustly imprisoned.

Nonetheless, the question of retroactivity has already been asked of the Supreme Court and, aside from the determination as to when it actually starts; which the Court is now determining in <u>**DODD V. US,**</u> **No. 04-5286 (2005)**, the Court already gave answer, **some fifteen years before BOOKER,** in <u>**TEAGUE V. LANE, 489 US 288 (1989) and recently reaffirmed that decision**</u> in **TYLER four years before BOOKER**. Just as <u>**OLANO V. US,**</u> 125 L.Ed. 2d 508 (1993) set the standard for plain error, **TEAGUE** set the standard for retroactivity of **new rules of criminal procedure** which, in <u>**all**</u> eight of the referenced denial responses of those other §2255 Motions, **in each,** the Government contends **BOOKER is** such a new rule of criminal procedure. In agreement with the Government, Petitioner also contends that **BOOKER,** <u>e</u>ffecting a substantive change in the law through the Supreme Courts remedial opinion there-in, resulted in and <u>e</u>ffected a new procedure of criminal law; specifically the procedure of sentencing via the Act in an advisory capacity rather than a mandantory on, **is** a new rule of criminal procedure. Petitioner disagrees with the Goverment's assertion that **BOOKER** does not fall squarley with-in the boundaries that the **TEAGUE** retroactivity test defines.

In examination of **TEAGUE**, this Petitioner first arrives at the fact that **TEAGUE** de-

clares that new rules of criminal procedure are "generally" not applicable retroactively for collateral review. "Generally" certainly is a broadly definable term, but, even if one were to apply the extreme stretching normally found in the practice of Yoga, "generally" cannot be construed to mean "without question", "absolutely" or "always". The more likely definition is "in nearly every instance" or "in most circumstances", such definition resulting in **TEAGUE's two** exceptions.

**TEAGUE's** first exception is that the new rule "places certain kinds of primary... conduct beyond the power of the criminal law making authority to proscribe". As this Petitioner was not previously convicted of an 'aggravated' felony nor did the Petitioner admit that His previous conviction was 'aggravated', either at the time of the original proceeding or during the instant proceeding, how did the Sentencing Court determine it to be 'aggravated' in the absence of such admission by the Petitioner and/or the absence of such finding by a jury? As Criminal History Catagory is determined for the purpose of issuing a sentence "which promotes respect for the law" in consideration of how much respect the Petitioner has, or has not, exhibited given the number and severity of previous convictions and punishment, a 16 point enhancement levied against the Petitioner in computation of His <u>**base offense level**</u>, which is to be based on the "**real conduct**" underlying the <u>**actual offense**</u>, is <u>**beyond the authority of the Sentencing Court to proscribe**</u>.

Criminal history is to be used to determine the Petitioner's Criminal History Catagory. If the Goverment or Sentencing Court wishes to impose extra punishment for past criminal conduct which the Goverment or Court contends relates to the **instant** offense level, **rather than** the Criminal History Catagory level such determination **must** be admitted by the Petitioner or submitted to a jury for proof beyond a reasonable doubt as the relevance of the alleged 'aggravated' felony to the instant offense in order to asses base offense level enhancement **must be proven to be relevant as, in BLAKELY; just because the Judge says it is so and sentences based upon that which He says is so <u>is inefficient to support the enhanced sentence</u>.** In relation to the Petitioner; if a previous felony, which was **not** found to be or charged as an 'aggravated' felony by the original sentencing authority, the Court **cannot proscribe punishment**

for an aggravated felony that **does not exist**. This is primary conduct that the Court is **inventing** and, in forcing this Petitioner to serve a term of imprisonment for **invented** conduct that **is not proven or admitted to be relevant to the instant offense**, adds more punishment already accounted for in the Criminal History Catagory, violates the Petioner's 5th Amendment right concerning double jeapordy, is, without a doubt, **far, far** removed from the Court's authority to proscribe and, so being, places the Supreme Court's decision extending **BLAKELY**'s findings to the USSG in **BOOKER**, as it applies to this Petitioner's sentencing under the USSG, **exactly and precisely** within **TEAGUE**'s first exception to a general requirement of non-retroactivity for new rules of criminal procedure.

Though the Supreme Court mandated in **TYLER** that only **one** of **TEAGUE**'s exceptions need to be met in order to qualify a new rule of criminal procedure as retroactively applicable; "a new rule **can** be retroactive to cases on collateral review if, **and only if,** the new rule falls within **one** of two narrow exceptions to the general requirement of non-retroactivity", the Petitioner nonetheless, to ensure the Court sees the validity of the Petitioner's claim that **BOOKER is retroactively applicable and that the Petitioner's §2255 is not untimely**, extends **TEAGUE**'s **second** exception to the factual basis of **BOOKER** and it's application to the Petitioner's circumstances of sentencing that He now appeals and makes clear to show the interpertive error's of the Goverment and the Magistrate Judge in their determination that this Petitioner is not entitled to relief.

**TEAGUE**'s second exception to a general requirement of non-retroactivity for new rules of criminal procedure can be met if the "new rule establishes a watershed rule of criminal procedure that implicate[s] the fundamental fairness of the trial" without which "the likelihood of accurate conviction is **seriously** diminished". If this Petitioner received an enhancement for an element of relevant criminal conduct **that does not exist, which He did**, then His conviction was not accurate. If the Sentencing Court determined the Petitioner's sentence based on alleged conduct **which it did not prove to be relevant to the instant offense, ehich was not in the indictment, and which adds**

**punishment to that already assessed and accounted for in His Criminal History Catagory, and such action has been deemed by the Supreme Court to be unconstitutional,** and all of the foregoing are the case in the Petitioner's sentence, **then the likelihood that His sentence is not accurate is absolute.** If the Petitioner was sentenced for that which He was not proven to have done, **which He was, then His trial or plea proceeding was "fundamentally unfair".** These facts place the Supreme Court's remedial decision and the finding that the USSG **do** implicate a defendant's 6th Amendment right in **BOOKER** directly in the scope of **TEAGUE's second** exception.

As to whether or not **BOOKER** is, in fact a 'watershed' decision, the Petitioner relies upon the fourth description of 'watershed' as it appears in Webster's Third New International Dictionary which defines 'watershed' as "a crucial or dividing point, line or factor". **BOOKER**'s remedial decision to change **the** Federal sentencing system, the USSG, from how it has been applied **for two decades,** because it's required application was found to implicate the 6th Amendment, **is the "crucial factor" and "crucial point"** the Supreme Court used **to "divide" the USSG's mandantory requirement from it's confliction with the 6th Amendment.** Petitioner previously alleges the predjudicial interpertation by the District and Circuit Courts of facts relating to cited case law and the **BOOKER** decision. The Petitioner has no illusion that the Honorable Court may determine Petitioner's above interpertive application of the dictionary definition of 'watershed' to be an example of the same predjudice. To clear any doubt as to whether or not **BOOKER** is, **indeed,** a 'watershed' decision, the Petitioner submits that He and this Honorable Court be bound to the statement of the 5th Circuit Court of Appeals which stipulated that **BOOKER** is "a watershed ruling of the Supreme Court", a statement it made in **VILLEGAS V. US, CrL 551 (2005).** Who better to definitively define the legal definition of whether or not **BOOKER is a 'watershed'** decision than a United States Circuit Court of Appeals, in fact, **the very Court which sits superior to the District Court whose Magistrate Judge seeks to deny this Petitioner relief?** Petitioner submits that there **can be no better authority,** save God Himself.

In answer to the question posed at the start of this portion of the Petitioner's argument; is Petitioner's asserted right, which He has shown to be newly recognized by

by the Supreme Court, retroactively applicable for collateral review, the Petitioner believes He has shown that answer to be an undoubtable "yes". Therefore the Honorable Court does have grounds to consider the merits of the Petitioner's §2255 Motion for the purposes of the Petitioner's requested relief, and the Honorable Court should additionally deny or dismiss the "proposed" findings of the Magistrate Judge Recio's Report and Recommendation.

### III. CONCLUSION/RELIEF PRAYED FOR

The Petitioner has disputed, on a point for point basis, each of the arguments the Goverment and Magistrate Judge set forth as grounds to deny the Petitioner relief. The Petitioner freely admits that He is guilty of illegally entering the United States and, in keeping with Congressional intent and the provisions of law, He should be sentenced according to **that act**, with the consideration of enhancement for the factual previous convictions used to determine the Petitioner's Criminal History Catagory. Any punishment or extension of sentence beyond those parameters is in violation of the Constitution and the Petitioner respectfully requests the Honorable Court to arrest the current Judgement and vacate the current sentence and impose a new judgement and sentence based upon the above stipulated facts which the Goverment can prove beyond a reasonable doubt and which the Petitioner admitted to. For this relief the Petitioner prays.

Should the Honorable Court, by some unfathomable means, **not** grant the Petitioner His requested relief upon the basis of facts He has presented in the foregoing argument, the Petitioner prays that the Honorable Court provide a point for point denial of the Petitioner's claims as set forth in the foregoing and forward a Certificate of Appealability with It's detailed denial response.

The Federal Judge is one appointed to His office for the purpose of being an impartial overseer of the proceedings that take place before Him in the Honorable Court. The very title of Honorable which is applied to **both** the Court and the Judge is meant to imply that the Judge will ensure that the proceedings He oversees will be conducted fairly and within the bounds dictated by the law. He has the power to stop, admonish, correct or otherwise involve Himself in the proceedings for the benefit of **both** sides. To fail to take action to correct a wrong, for whatever reason or excuse, would be **dishonorable.**

## CERTIFICATE OF SERVICE

I, David Guerrero-Aguilar, author of and Petitioner in the foregoing Response to the Report and Recommendation of the Magistrate Judge, do certify that I have caused to be delivered, by US Mail, with the proper postage affixed, one original and three true and correct copies of the foregoing to the Clerk of the United States District Court, Browsville Division on this 21th day of June, 2005.

*David Guerrero*
DAVID GUERRERO-AGUILAR
FEDERAL REGISTER #94621-079
MCMULLEN A
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 4200
THREE RIVERS, TEXAS 78071-4200

## CERTIFICATE OF WITNESSING NOTARY

IN THE STATE OF TEXAS,
THE COUNTY OF Live Oak,

BEFORE ME CAME AND PERSONALLY APPEARED **DAVID GUERRERO-AGUILAR**, KNOWN TO ME TO BE THE PERSON WHO IS DESCRIBED IN AND EXECUTED THE ABOVE FOR THE PURPOSE THEREIN CONTAINED, THIS 24TH DAY OF JUNE, 2005.

*Veronica Ybanez*
NOTARY PUBLIC, TEXAS



4-23-07
MY COMMISSION EXPIRES: